UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: May 16, 2014

---------------------------------------------------------X

GUSTAVO SARAVIA, RONALD CUCOLO, and OMAR MORALES AGUILAR[1]; on behalf of themselves and all other persons similarly situated,

*Plaintiffs*,

*-against-*

2799 BROADWAY GROCERY LLC d/b/a CASCABEL TAQUERIA, et al.,

*Defendants*.

---------------------------------------------------------X

12 Civ. 7310 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

This is a wage-and-hour case brought by Plaintiffs, former employees of Cascabel Taqueria ("Cascabel"), a restaurant, which has two locations in Manhattan. The Second Amended Class Action Complaint ("SAC") asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The Court has previously granted Plaintiffs' motion for conditional certification of their FLSA claims as a collective action under 29 U.S.C. § 216(b). Plaintiffs now move for class certification of their NYLL claims under Federal Rule of Civil Procedure 23. For the reasons that follow, the motion for class certification is GRANTED IN PART.

**BACKGROUND**

Plaintiffs claim that Defendants violated the NYLL by failing to pay their employees the

[1] At a conference on January 15, 2014, the Court approved the substitution of Mr. Aguilar for former plaintiff Dionicio Flores Ramirez, and the case caption is so amended.

minimum wage, overtime compensation, "spread-of-hours" compensation,[2] and by unlawfully retaining gratuities. (*See* SAC claims III, IV, V, and VI.) Plaintiffs also claim that Defendants failed to provide the notices concerning their compensation required by NYLL § 195 (*id.* claim VII) and that Defendants retaliated against certain employees for participating in this lawsuit (*id.* claim IX). With regard to their compensation claims, Plaintiffs allege that Defendants engaged in several unlawful policies and practices, including (1) "shaving" hours in order to pay employees for fewer hours than they actually worked; (2) failing to pay spread-of-hours compensation altogether; and (3) improperly distributing tips to non-tip-eligible employees from a "tip pool."

These state claims follow the FLSA claims that the Court has already conditionally certified as a collective action under that statute. *See generally* 29 U.S.C. § 216(b). Plaintiffs now seek class certification for their NYLL claims under the distinct standards of Federal Rule of Civil Procedure 23.

First, Plaintiffs seek certification of a liability-only class under the NYLL:

> Each current and former employee of any Cascabel Taqueria restaurant who are/were employed as front of the house workers such as servers (wait staff), bartenders, runners, bussers, ("FOH Workers"); and employed as kitchen back of the house workers such dishwashers, cooks, line cooks, prep cooks and any other kitchen-related tasks ("BOH Workers")[.] Managers, supervisors, officers, executives, managerial or administrative personnel are not part of the defined class.

(Pls.' Mem. at 1 ("the Class").) Second, Plaintiffs seek certification of "a liability and damages subclass consisting of FOH Workers that were required to share in the tip pool ("FOH Subclass")." (*Id.*)

[2] A "spread of hours" refers to "the length of the interval between the beginning and end of an employee's workday." N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 146-1.6. New York's labor regulations governing restaurant workers provide that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." *Id.*

In other words, the Class would be certified only with respect to the issue of liability, but the FOH Subclass would be certified with respect to both liability and damages.

## DISCUSSION

### I. Timeliness of the Motion

As an initial matter, Defendants object to the motion for class certification as untimely, citing Rule 23(c)'s requirement that such a motion must be decided at "an early practicable time." They argue that since discovery has closed, it is too late to certify a class.

"The reason for th[e] rule [that class determinations be made early] is plain: fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages." *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 503 (2d Cir. 1995). "However, a decision about certification need not be made at the outset; a court should delay a certification ruling until information necessary to reach an informed decision is available." *Macpherson v. Firth Rixson Ltd.*, No. 12-CV-6162, 2012 WL 2522881, at *3 (W.D.N.Y. June 28, 2012). Indeed, the Advisory Committee Notes to Rule 23(c) state that the "early practicable time" language was amended in 2003 from "as soon as practicable" in order to "reflect[] prevailing practice [and] capture[] the many valid reasons that may justify deferring the initial certification decision," including the need for discovery.

Moreover, "the untimeliness of a class-certification motion, in and of itself, will not justify denying class status to the action." Wright, Miller, et al., 7AA *Federal Practice & Procedure* § 1785.3 (3d ed.). Rather, "certification will be denied only when the late timing of the determination may cause prejudice or unduly complicate the case." *Id.*

Defendants have not demonstrated prejudice, and they certainly have had ample notice of the scope this lawsuit. From the outset, Plaintiffs styled this lawsuit as a "Class Action

Complaint" with a specific set of "Rule 23 Class Allegations" associated with their NYLL Claims. (*See* Dkt. 1 ¶¶ 53–59.) In discovery, Plaintiffs obtained from Defendants a list of more than 600 employees who have worked at Cascabel, which Defendants themselves characterize as "a list of potential class members." (Defs.' Opp'n at 4.) Defendants cannot claim to be surprised by Plaintiffs' motion for class certification.

Defendants do not specify what additional discovery they would need for purposes of this motion, and indeed they concede that they would not even seek additional discovery if given the opportunity, due to a lack of resources. (*Id.* at 6–7.) Although they suggest that they need discovery on their employees' claims of fear of retaliation and the "allegations of unlawful wage payments" (*id.* at 5), they give no explanation for why these merits issues require special discovery for purposes of class certification.[3] Perhaps the motion for class certification could have been made sooner, but absent a showing of prejudice, the Court will not deny this motion for untimeliness.

## II. Standards for Class Certification

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a)," *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008), namely that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[3] In any event, the Court is denying certification with respect to the retaliation claims for the reasons discussed below. *See infra* Part IV.A.

If these four requirements are met, the court "may then consider granting class certification [under Rule 23(b)(3)] where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Teamsters*, 546 F.3d at 202.

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). A district court must conduct a "rigorous analysis" to make that determination. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Nonetheless, it has "broad discretion" in doing so. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 165 (2d Cir. 2012).

## III. Rule 23(a) Requirements

### A. Numerosity

Numerosity is presumed when a class consists of forty or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As noted above, Defendants have acknowledged that there are over 600 "potential class members" and in particular have conceded that "Defendants have employed in excess of 40 employees" in the relevant positions. (Markowitz Decl. Ex. O at 4.) Defendants' objection that Plaintiffs "have not established that any of them have actually been aggrieved" relates to the merits of the claims, not the numerosity of the class. Accordingly, the Court finds that the numerosity requirement is satisfied.

### B. Commonality

"Commonality is satisfied where a single issue of law or fact is common to the class." *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing *Wal-*

*Mart*, 131 S. Ct. at 2256 ("[E]ven a single common question will do.")). Nonetheless, class certification requires not only "common questions," but "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551.

Here, the members of the putative Class indeed share common questions of law and fact that are susceptible to common answers that will drive the resolution of the litigation. One central question, for instance, is whether Defendants' maintained a "policy or practice" of shaving their employees' hours. The answer to that question in turn affects whether employees were deprived of overtime and spread-of-hours compensation because those issues depend on the number of hours worked per day. Plaintiffs have further simplified these questions by seeking certification of a liability-only Class, which eliminates potentially individualized questions about how much particular employees' hours were shaved and what impact that would have on their damages. Thus, "[t]he fact that some [Class members] were not affected by the purported time-shaving practice or were affected to different extents does not undermine plaintiffs' ability to establish liability—*i.e.* to prove that [Defendants] altered employee time records for illegitimate reasons—through generalized proof." *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 308 (E.D.N.Y. 2013); *see also Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237, 2007 WL 2872455, at *6 (S.D.N.Y. Sept. 28, 2007) ("[T]here are significant issues common to the class, including whether or not Defendants had a policy of denying overtime pay . . . .").

As for the FOH Subclass, the common question of whether Defendants had a policy of unlawfully distributing tips to non-tip-eligible employees is central to the putative Subclass members' claims that they were deprived of such tips under NYLL § 196-d. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("[The NYLL] prohibits

employers from requiring tipped employees to share tips with non-service employees or managers."). The answer to that question will also impact the question of whether Defendants were entitled to take a "tip credit" against the generally applicable minimum wage with respect to members of the FOH Subclass. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011) ("[D]efendants' violation of N.Y. Lab. Law § 196–d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit."). Likewise, adjudicating Plainitiffs' claim that Defendants failed to provide the required notice of the tip credit will impact the issue of whether Defendants could take the tip credit. *See* NYCRR § 146-1.3 (an employer may take a tip credit only "if the employee has been notified of the tip credit as required in section 146-2.2"); NYCRR § 146-2.2 ("[A]n employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate . . . .").

Defendants respond that Plaintiffs have failed to offer proof "that such a policy in fact existed." (Defs.' Opp'n at 12.) This appears to be a merits argument for summary judgment or trial, but it echoes some language in *Wal-Mart* that might be read to suggest otherwise. The *Wal-Mart* plaintiffs had failed to offer "significant proof" of a companywide policy of gender discrimination that could operate as the "glue holding the alleged *reasons* for [the millions of employment] decisions together." *Wal-Mart*, 131 S. Ct. at 2552. Thus, the Court reasoned, the plaintiffs had not bridged the "conceptual gap" between an individual's claim that she was discriminated against and the broader claim that an entire class of employees had been discriminated against on the same grounds. *Id.* at 2553.

Here, the claims are not based on individual employment decisions but rather the legality of Defendants' compensation policies. The precise nature and lawfulness of those policies are

common questions of fact and law that are apt to drive the resolution of the litigation for the entire class. Accordingly, "[t]he weight of authority rejects the argument that [*Wal-Mart*] bars certification in wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases); *see also Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (distinguishing *Wal-Mart* from cases where "Plaintiffs allege that Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices").

To the extent that *Wal-Mart* requires Plaintiffs to adduce "significant proof" to support their allegations that Defendants' policies violated the NYLL, they have done so. For instance, they have submitted affidavits from FOH Workers who state that the hours on their pay stubs did not accurately reflect the number of hours worked and from BOH Workers who state that they were paid the same wage every week regardless of how many hours they worked. Futhermore, Defendants admit that they "did not pay spread of hours compensation . . . as they were unaware of the obligation." (*Id.* Ex. O at 11.)[4]

As for policies affecting the FOH Subclass, it is undisputed that shift leaders participated in the tip pool. (*Id.* at 9.) Indeed, several affiants—including former shift leaders themselves—state that their work involved significant management responsibilities. (*See id.* Exs. I–K.) For purposes of class certification, this is "significant proof" of a policy of distributing tips to non-tip-eligible employees.

---

[4] To the extent that the parties dispute which section of the NYCRR governs the spread-of-hours issue in this case (*compare* Defs.' Opp'n at 17–18 *with* Pls.' Reply at 3), that is also a common question that can be resolved on a classwide basis. *See generally Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777, 2012 WL 3578781, at *6 (S.D.N.Y. Aug. 2, 2012) ("12 NYCRR § 146–1.6(d) requires that all employees of hospitality industry, which includes restaurants and all-year hotels, receive spread of hours compensation regardless of given employee's regular rate of pay, in contrast to 12 NYCRR § 142–2.4, which applies to miscellaneous industries and occupations, and which does not ensure additional compensation to employees whose wages sufficiently exceed minimum wage[.]") (internal quotation marks omitted).

Since common questions abound for both the Class and FOH Subclass, the Court finds that the commonality requirement is easily satisfied here.

**C. Typicality**

Typicality "is satisfied where 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *IndyMac*, 286 F.R.D. at 233 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Here, the named Plaintiffs' claims are typical of those of the Class and FOH Subclass. Messrs. Saravia and Cucolo were FOH Workers who were subject to the tip pool and claim that they were not paid for all the hours that they actually worked. (Markowitz Decl. Exs. B, C.) Mr. Aguilar was a BOH Worker who claims that his wages were the same regardless of how many hours he worked. (*Id.* Ex. D.) Defendants' only basis for arguing that their claims are atypical is that each Class member's damages would vary depending on the number of hours worked and wages paid. This argument is irrelevant, since Plaintiffs seek a liability-only Class, which would not require individual determinations of how many hours were shaved.[5] Accordingly, the Court finds the typicality requirement satisfied.

**D. Adequacy of Representation**

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys

[5] The question of whether individual damages issues would predominate with respect to the FOH Subclass is discussed below. *See infra* Part III.B.

are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

As noted above, the named Plaintiffs appear to have interests that are fully aligned with those of the putative class members and have participated in discovery. Defendants do not suggest otherwise. It is also undisputed that Plaintiff's counsel, Leeds Brown Law, P.C., is experienced in litigating employment class actions. (*See* Markowitz Decl. ¶¶ 33–38.) Defendants suggest, however, that Leeds Brown's professional conduct in two unrelated cases raises "questions concerning the adequacy of representation." (Defs.' Br. 20.)

Whatever may be said about Defendants' arguments, they do not undermine Plaintiffs' motion for class certification. As stated, the prior cases are unrelated to this one, and neither has resulted in a determination of misconduct. The named Plaintiffs have also signed declarations stating that they have discussed those cases with their counsel and remain satisfied with their counsel's representation. (Barbeit Decl. Ex. T.) Therefore, the Court will not deny class certification on the basis of these unresolved and unrelated matters involving Plaintiffs' counsel. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 (7th Cir. 2013) ("Not any ethical breach justifies the grave option of denying class certification. . . . [U]nless the violation prejudices one of the parties or undermines the court's ability to resolve the case justly, state bar authorities—not a court—should enforce the rules and sanction the attorney.").

Accordingly, the Court finds that the named plaintiffs will fairly and adequately protect the interests of the Class and FOH Subclass.

## IV. Rule 23(b) Requirements

### A. Predominance of Common Questions

"The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001). "To satisfy the predominance prong of Rule 23(b)(3), a plaintiff must show that common proof will predominate at trial with respect to the essential elements of liability of the underlying causes of action." *Kottler v. Deutsche Bank AG*, No. 08-CIV-7773, 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010). "[P]redominance does not require a plaintiff to show that there are no individual issues." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009).

As explained above, the common issue of whether Defendants maintained a policy of shaving employees' hours will be central to resolving the Class's compensation disputes. Although there are invariably some differences among class members, the liability-only nature of the Class will minimize the prevalence of individual issues in this case. Since the Class claims focus on the existence and legality of Defendants' compensation policies, common proof would predominate at trial with respect to the essential elements of almost all of those claims. *See Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 308 (E.D.N.Y. 2013) ("The fact that some Discovery Plaintiffs were not affected by the purported time-shaving practice or were affected to different extents does not undermine plaintiffs' ability to establish liability . . . through generalized proof.").

Retaliation is different. There is scant support for the proposition that Defendants' alleged retaliation against certain Cascabel employees reflected a broader policy that impacted the Class as a whole. The SAC alleges only that "several" Class members were retaliated against

(SAC ¶ 123), and indeed one of the named Plaintiffs, Mr. Aguilar, does not appear to allege that he was retaliated against (*see* Markowitz Decl. Ex. D). To the extent that Plaintiffs initially sought class certification of the retaliation claims on the basis that Defendants' termination of some employees left the rest "in fear of retaliation" (SAC ¶ 123), they now appear to have abandoned that theory for certification purposes. (*See* Pls.' Reply at 8 ("'Claims of fear' are not relevant to any of the claims [for] which Plaintiffs seek certification.").) Therefore, the Court excludes issues relating to Plaintiffs' retaliation claim from class adjudication. *See* Fed. R. Civ. P. 23(c)(1)(B), (c)(4).

As for the FOH Subclass, common issues will predominate, even though it includes damages issues. That is because there is no dispute that "all servers were subject to [Defendants'] uniform tip-sharing or tip-pooling system," and plaintiffs have alleged that they "were required to share their tips with the same tip-ineligible person(s) (e.g., a manager)." *Shahriar*, 659 F.3d at 253 (post-*Wal-Mart* decision). Thus, "[i]f Plaintiffs succeed in showing that the [shift leaders] were not eligible to receive tips under New York law, then each of the [FOH Subclass] plaintiffs will likely prevail on his or her section 196–d claims, although class plaintiffs' individualized damages will vary." *Id.* Those individualized damages calculations will likely be relatively straightforward once it is determined whether the tip-pool policy violated the NYLL.

**B. Superiority of Class Adjudication**

The superiority requirement reflects "[t]he goal of class actions . . .to 'achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness.'" *Kottler v. Deutsche Bank AG*, No. 08-CV-7773, 2010

WL 1221809, at *4 (S.D.N.Y. Mar. 29, 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

Under Rule 23(b)(3), the following factors are to be considered in making the "superiority" determination: (a) the interest of members of the class in individually controlling the prosecution of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

Upon consideration of those factors, the Court finds that a class action is a superior method to adjudicating the controversy. Trying multiple individual actions would be a waste of scarce judicial resources, and the individual employees could not afford to pursue their claims individually. *See N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08-CV-5653, 2011 WL 3874821, at *9 (S.D.N.Y. Aug. 16, 2011). Moreover, the opt-out requirement of class adjudication means that the NYLL class provides greater coverage than the opt-in FLSA collective action. Therefore, class adjudication would more comprehensively resolve the dispute.

**V. Appointment of Class Counsel**

Since the Court is certifying the Class and FOH Subclass, it must appoint class counsel. Fed. R. Civ. P. 23(g). Upon consideration of the factors in Rule 23(g)(1)(A), the Court finds that Leeds Brown Law, P.C. is appropriate as class counsel in this case. As noted above, Leeds Brown has experience in wage-and-hour class actions. It has already dedicated substantial time and resources to investigating and litigating this case. Therefore, Leeds Brown is appointed as class counsel to represent both the Class and the FOH Subclass.

## CONCLUSION

As set forth above, the Court certifies the liability-only Class and the liability-and-damages FOH Subclass with respect to the SAC's NYLL claims, except that issues relating to the retaliation claim are excluded from class adjudication. Accordingly, Plaintiffs' motion is GRANTED IN PART.

In addition, the Court appoints Leeds Brown Law, P.C. as class counsel.

Dated: New York, New York
May 16, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge