UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUSTAVO SARAVIA, RONALD CUCOLO, and OMAR MORALES AGUILAR; on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>2799 BROADWAY GROCERY LLC d/b/a CASCABEL TAQUERIA; 301 EAST 80th GROCERY LLC d/b/a CASCABEL TAQUERIA; and/or any other entities affiliated with, controlling, or controlled by 2799 BROADWAY GROCERY LLC d/b/a CASCABEL TAQUERIA; 301 EAST 80th GROCERY LLC d/b/a CASCABEL TAQUERIA and/or DAVID CHIONG; ELIZABETH GAUDREAU, individually<br><br>Defendants. | **Docket No.: 12-CV-7310**<br><br>**(PAC) (GWG)** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Gustavo Saravia, Ronald Cucolo, and Omar Morales Aguilar (collectively, "Named Plaintiffs"), on behalf of themselves, Opt-in Plaintiffs, and the members of the Class of individuals certified by Judge Paul A. Crotty on May 16, 2014 (as hereinafter defined "Plaintiffs") and Defendants 2799 Broadway Grocery LLC d/b/a Cascabel Taqueria, 301 East 80th Grocery LLC d/b/a Cascabel Taqueria, and/or any other entities affiliated with, controlling, or controlled by 2799 Broadway Grocery LLC d/b/a Cascabel Taqueria, 301 East 80th Grocery LLC d/b/a Cascabel Taqueria, and/or David Chiong and Elizabeth Gaudreau, individually (collectively, "Defendants," and together with the Named Plaintiffs, the "Parties").

### RECITALS AND BACKGROUND

A.      WHEREAS, Named Plaintiffs filed a Class Action Complaint, which is now pending in the United States District Court for the Southern District of New York (the "Court"), designated as Index No. 12-CV-7310 (the "Action"). Judge Crotty certified this case as a class action on May 16, 2014, and authorized the distribution of notice to the class; and

B.      WHEREAS, the Plaintiffs have alleged, *inter alia*, in their Complaint that Defendants underpaid them, and the other members of the Class, for work they performed; and

C.      WHEREAS, the parties recognize the uncertainties of the outcome of this Action and have agreed to settle the claims of the Class after taking into account the expense and length

of time necessary to prosecute and defend the Action through trial. If litigation continues, it may take years before there would be a final adjudication of the claims asserted. In contrast, the proposed settlement provides substantial and immediate benefits to the class. Based on these considerations, and without conceding any infirmity or defect in the claims Plaintiffs have asserted, Class Counsel conclude that it is in the best interest of the Class to settle their claims, on the terms set forth herein, and contend such settlement to be fair, reasonable, and adequate; and

D.     WHEREAS, Defendants have defended and intend to vigorously contest each and every claim in the Action, deny all material allegations of the Action, as to which Defendants allege numerous defenses. Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to the Action.

E.     WHEREAS, the parties desire to compromise and settle all wage claims which have been brought, by or on behalf of the Class Members; and

F.     WHEREAS, the parties desire and intend to seek Court approval of this Agreement and, upon Court approval, the parties also intend to seek an Implementation Order requiring the parties to reach a resolution of all claims as set forth herein and thereafter obtain a Final Order from the Court dismissing the claims of all Class Members, other than those who properly opted out; and

G.     WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs, Opt-in Plaintiffs and Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, might result in a recovery that is less favorable and that would not occur for several years, and/or that Defendants may be forced to file for bankruptcy were a judgment to be issued against them, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and putative Class Members.

H.     WHEREAS, Named Plaintiffs and Defendants, by and through their respective counsel, have engaged in extensive settlement discussions including private mediation with Mediator Patrick Michael McKenna and two Settlement Conferences with the Honorable Gabriel W. Gorenstein in connection with the potential resolution of the Action. Plaintiffs and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

NOW THEREFORE, it is agreed that in consideration of the mutual covenants and promises set forth in this Agreement and the entry by the Court of an Implementation Order establishing the procedures for the resolution of the claims asserted or that could have been

asserted in this Action by all Class Members in this matter and approving the terms and conditions of this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.**  "Agreement" means this Settlement Agreement and Release.

1.2     **Authorized Claimant.** "Authorized Claimant" means Named Plaintiffs, a Class Member or the authorized legal representative of such member, who timely files a Claim Form in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check.  Named Plaintiffs are deemed Authorized Claimants upon execution of this Agreement and need not return a Claim Form.

1.3     **Bar Date.**  "Bar Date" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form. Subject to the Court's approval and the provisions of Section 2.5(E), the Bar Date shall be (1) no later than forty-five (45) days after the initial mailing of Notice by the Settlement Claims Administrator, or (2) if Class Members did not receive the Notice or were unable to file the Claim Form within forty-five (45) days due to change of address, military service, hospitalization, or other extraordinary circumstances, an additional fifteen (15) days will be given to such Class Members to file a Claim Form.

1.4     **Claim Form and Release.**  "Claim Form" or "Claim Form and Release" means the form, a copy of which is attached to the Notice of Proposed Settlement, which putative Class Members must sign and return postmarked by the Bar Date.

1.5     **Class Counsel**.  "Class Counsel" or "Plaintiffs' Counsel" means Jeffrey K. Brown and Daniel Markowitz, Leeds Brown Law, P.C., One Old Country Road, Suite 347, Carle Place, New York 11514.

1.6     **Class List.** "Class List" means a list in electronic format using Excel, that includes the names, last known addresses, social security numbers, telephone numbers, W-2 information, and dates of employment for each respective Class Member.

1.7     **Costs and Fees.**  "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses; accountant fees and costs; Settlement Claims Administrator's fees and costs; Employee Payroll Taxes; and Service Awards.

1.8     **Court.**  "Court" means the United States District Court for the Southern District of New York.

1.9     **Days.**  "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

**1.10    Defendants.** "Defendants" means 2799 Broadway Grocery LLC d/b/a Cascabel Taqueria, 301 East 80th Grocery LLC d/b/a Cascabel Taqueria, and/or any other entities affiliated with, controlling, or controlled by 2799 Broadway Grocery LLC d/b/a Cascabel Taqueria, 301 East 80th Grocery LLC d/b/a Cascabel Taqueria, and/or David Chiong and Elizabeth Gaudreau, individually.

**1.11    Defendants' Counsel.** "Defendants' Counsel" means Milman Labuda Law Group PLLC, 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042.

**1.12    Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Action, including FICA, FUTA, and SUTA obligations.

**1.13    Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

**1.14    Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, and dismissing the Action with prejudice.

**1.15    Final Effective Date.** Provided no appeal is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Order. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

**1.16    Final Settlement Amount.** "Final Settlement Amount" means the sum of the Net Settlement Fund plus all Court-approved Costs and Fees.

**1.17    Gross Settlement Fund.** "Gross Settlement Fund" means Six Hundred Thousand Dollars ($600,000.00), the amount that Defendants agree to pay and that is utilized for calculation and distribution purposes, subject to the right to terminate the Agreement as set forth in Section 2.10, for complete and final resolution of the Action.

**1.18    Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 3.5 prior to any deduction for tax purposes.

**1.19    Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after proper taxes are withheld and paid pursuant to Section 3.1(C).

**1.20**   **Named Plaintiffs.**  "Named Plaintiffs" refers to Gustavo Saravia, Ronald Cucolo, and Omar Morales Aguilar.

**1.21**   **Net Settlement Fund.** "Net Settlement Fund" means the aggregate balance to be distributed to all Authorized Claimants after the deduction of Costs and Fees.

**1.22**   **Notice or Notices.**  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

**1.23**   **Objector.**  "Objector" means an individual Authorized Claimant who properly files an objection to this Agreement.

**1.24**   **Opt-out Statement.**  "Opt-out Statement" means a written, signed statement that an individual Class Member has elected to exclude himself or herself ("opt out") from the settlement.

**1.25**   **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Class Members; and (iii) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the mailing of Notice, and the Fairness Hearing date.

**1.26**   **Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Preliminary Approval Order and the Final Order.  Interest, if any, earned in the QSF will become part of the Net Settlement Fund to be distributed to the Authorized Claimants.

**1.27**   **Released Class Claims.**  "Released Class Claims" means any and all wage and hour claims based on or under Federal or New York State law, arising during the Settlement Period, whether known or unknown, that were or could have been asserted in Plaintiffs' Complaint.  The Released Class Claims include, but are not limited to, statutory, constitutional, contractual or common law claims, (including the FLSA and NYLL) for unpaid gratuities, service charges, minimum wages, overtime compensation, spread-of-hours compensation, or any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.  Released Class Claims only relate to Class Members' employment at any Cascabel Taqueria restaurant.

**1.28**   **Released Defendants.**  "Released Defendants" means 2799 Broadway Grocery LLC d/b/a Cascabel Taqueria, 301 East 80th Grocery LLC d/b/a Cascabel Taqueria, Cascabel Hospitality LLC, all subsidiaries, affiliates, successors, assigns and each of their respective owners, shareholders, officers, directors, employees, agents, attorneys and accountants

including but not limited to David Chiong, Elizabeth Gaudreau, Gerald Shallo, and Dean Palin.

**1.29    Reserve Fund.**  "Reserve Fund" is an amount set aside in the QSF in case of error or omission to be paid and corrected via the mechanisms outlined in Section 3.1(B).

**1.30    Service Award.** "Service Award" means that portion of the Final Settlement Amount, if any, requested by the Named Plaintiffs and approved by the Court as a reasonable incentive award to the Named Plaintiffs and certain Opt-in Plaintiffs for representing the interests of the Class Members, for engaging in discovery, for communicating with Class Counsel, and otherwise representing the interests of other Class Members during the course of this litigation.

**1.31    Settlement Claims Administrator.** "Settlement Claims Administrator" means the qualified administrator selected pursuant to Section 2.2.

**1.32    Class and Class Member.** "Class" (collectively) and/or "Class Member" (individually) means:  Each current and former employee of any Cascabel Taqueria restaurant who are/were employed as front of the house workers such as servers (wait staff), bartenders, runners, host/hostess, bussers, ("FOH Workers"); and employed as kitchen back of the house workers such as dishwashers, cooks, line cooks, prep cooks, porters, delivery persons, and any other kitchen-related tasks ("BOH Workers") who worked at any time from December 1, 2009 until the date of the Preliminary Approval Order. The Class also includes Shift Leaders.  Managers, supervisors, officers, executives, shareholders, directors, managerial or administrative personnel are not part of the defined class.

**1.33    Settlement Checks.**  "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount.

**1.34    Settlement Period.** "Settlement Period" means December 1, 2009 until the date of the Preliminary Approval Order.

## 2.    PRELIMINARY APPROVAL AND PROCEDURE

**2.1    Class.**  Pursuant to Judge Crotty's May 16, 2014 order on class certification, the Class shall be defined in accordance with those two orders, which certify the Class, appointed Class Counsel, and authorized the distribution of Notice to those workers.

**2.2    Settlement Claims Administrator.**

    A.    **Retention.** Within fifteen (15) days after the filing of a Preliminary Approval Motion, Class Counsel shall engage a Settlement Claims Administrator.

B.     **Funding Settlement Claims Administrator.** The costs and expenses incurred by the Settlement Claims Administrator shall be paid from the Final Settlement Amount as approved by the Court.  The Settlement Claims Administrator shall be paid for by Defendants and payment to the Settlement Claims Administrator and is separate and apart from, and not to be included as part of, Plaintiffs' counsel's fees or costs and shall not exceed $25,000.00.

C.     **Responsibilities of Settlement Claims Administrator.**  The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Forms; (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Claim Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from respective parties regarding requests or communications made by the Parties; (iv) monitoring and maintaining a telephone number with telephone answerers until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) distributing the Settlement Checks to Authorized Claimants and/or Court-approved Costs and Fees, as necessary; (ix) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (x) mailing Service Awards and Settlement Checks in accordance with this Agreement and  the Final Order; (xi) issuing the W-2 and 1099 Forms for all amounts paid from the Final Settlement Amount; (xii) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Claim Forms; (xiii) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and any and all other actual or attempted written or electronic communications with Class Members; (xvii) confirming in writing to counsel for the Parties and the Court its completion of the administration of the settlement; (xviii) timely responding to communications from the Parties and their counsel; (xix) providing all information, documents and calculations necessary to confirm the Final Settlement Amount; and (xx) such other tasks as the Parties mutually agree.

D.     **Access to the Settlement Claims Administrator.**  The Parties will have equal access to the Settlement Claims Administrator.  Class Counsel and Defendants

agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

**2.4    Preliminary Approval Motion.**

A.    Within thirty (30) days of complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Claim Form, (3) the proposed Preliminary Approval Order, and (4) an executed version of this Agreement. The Preliminary Approval Motion also will seek a Fairness Hearing on the earliest practicable date.

B.    In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

C.    Plaintiffs will file the Preliminary Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

**2.5    Notice and Claim Forms to Class Members.**

(A)    **Class List to Counsel.** Within fourteen (14) days after the Preliminary Approval Order is signed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator and Class Counsel with the Class List.

(B)    **Class List Documentation**. Within fourteen (14) days after the Preliminary Approval Order is signed by the Court, Defendants shall provide Class Counsel with copies of W-2s for all Class Members.

(C)    **Notice.** The Notice will inform Class Members about this settlement as well as their waiver of any interest and liquidated damages, and will also advise them of the opportunity to object to, opt-out of, or participate in the settlement, and to appear at the Fairness Hearing. Within forty (40) days of the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court-approved Notices and Claim Forms.

(D)    **Skip Trace and Re-mailing.** If a Claim Form is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain a current address, including one skip trace, and shall re-mail the Claim Form to such address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to

any Class Member who requests them after the initial mailing of Notice and before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notices and Claim Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing.  All costs of locating Class Members will be paid from the QSF.

(E) **Bar Date.** To be deemed an Authorized Claimant, Class Members must postmark, email, or fax a signed Claim Form to the Settlement Claims Administrator by the Bar Date. The Bar Date shall be (i) forty-five (45) days from the date of the initial mailing or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who did not receive the Notice, or were unable to file a timely Claim Form due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances. If an envelope does not contain a postmark, it shall be deemed received on the date that the Class Administrator stamps the envelope or Claim Form as "received."

(F) Named Plaintiffs are deemed Authorized Claimants and need not file a Claim Form.

## 2.6    Opt-out: Class Members who Opt-out.

(A) Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement ("Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out, such as: "I opt out of the Cascabel wage and hour settlement."   To be effective, an Opt-out Statement must be postmarked by United States Postal Service on or before the Bar Date.

(B) Class Members who elect to opt-out of the settlement ("Opt-out Period") must do so on or before the Bar Date.

(C) The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendants' Counsel not later than three (3) days after receipt.  The Settlement Claims Administrator shall also attach copies of any Opt-out Statements to its affidavit it provided in verifying the claims administration process prior to the Fairness Hearing.  The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)    Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Order, and will have any Released Class Claims released and dismissed with prejudice.  Only those Class Members who timely complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date will be deemed Authorized Claimants. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who do not submit a timely Claim Form as set forth in this Agreement unless otherwise ordered by the Court or agreed upon by the Parties.

**2.7    Objectors: Authorized Claimants who Object to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing and validly file a Claim Form by the Bar Date.  To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date.  The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address, and telephone numbers of the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.  The Settlement Claims Administrator shall also file the date-stamped originals of any and all objections with the Court.

(B)    Any Authorized Claimant who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections. An Objector may withdraw his or her objections at any time.  Any Class Member who has elected to opt-out may not submit objections to the settlement.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8    List & Calculations to Counsel.**

(A)    No later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel: (a) a list of all Authorized Claimants, (b) a list of all Objectors, and (c) a list of all Class Members who timely submitted an Opt-out Statement.  Throughout the period of claims administration, the Settlement Claims Administrator shall provide weekly reports to the Parties upon their request regarding (i) the status of the mailing of the Notices and Claim Forms to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement

Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Authorized Claimants, Objectors, and opt-outs.

**2.9**     **Fairness Hearing and Application for Final Approval and Dismissal.**

(A)     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavits and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Order.

(B)     At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) enjoin all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants and any Service Awards to the Named Plaintiffs as described in this Agreement; (4) order the Costs and Fees to be paid from the QSF; (5) dismiss this Action with prejudice, and release the Released Class Claims as against Released Defendants; (6) enter a Final Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)     The Final Order may further order the Settlement Claims Administrator to: (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, and (2) retain copies of all of the endorsed Settlement Checks.

(D)     Plaintiffs will file the Final Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

**2.10    Termination of Agreement.**

    **(A)    Procedures for Termination.**

        (1)    Within fifteen (15) days prior to the Fairness Hearing or as soon as practical, Class Counsel or the Settlement Claims Administrator shall provide notice by both email and overnight delivery to Defendants' Counsel of the Final Settlement Amount, together with any available supporting documents including an Excel spreadsheet that designates the appropriate totals and calculations to confirm the Final Settlement Amount ("Notice of Final Settlement Amount").

        (2)    Defendants may terminate this Agreement <u>only</u> if the Final Settlement Amount exceeds Four Hundred Fifty Thousand Dollars ($450,000.00). Defendants may not terminate this Agreement under any circumstances in the event the Final Settlement Amount does not exceed Four Hundred Fifty Thousand Dollars ($450,000.00). To terminate this Agreement, Defendants or their counsel shall give written notice ("Notice of Termination"), sent via overnight carrier and email, to Class Counsel no later than ten (10) days after the issuance of the Notice of Final Settlement Amount.

        (3)    To the extent the Final Settlement Amount exceeds Four Hundred Fifty Thousand Dollars ($450,000.00), within ten (10) days from Class Counsel's receipt of Notice of Termination, Plaintiffs may reduce pro rata the distribution to be paid to the Authorized Claimants, such that the Final Settlement Amount does not exceed Four Hundred Fifty Thousand Dollars ($450,000.00). In the event the Plaintiffs exercise this option, the term "Final Settlement Amount" as used in this Agreement shall reflect this reduced amount. To terminate this Agreement on the grounds specified in this subsection, Plaintiffs or their counsel shall give written notice, sent via overnight carrier and email, to Defendants' Counsel no later than ten (10) days from Class Counsel's receipt of Notice of Termination.

    **(B)    Effect of Termination.** Termination shall have the following effects:

        1.    In the event this Agreement is terminated, the Parties will continue with the litigation as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred.

        2.    Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, Class Counsel or otherwise with the exception of the pre-funded costs of the Settlement Claims Administrator and the costs of mailing notice to the Class notifying them that the settlement has been terminated.

3.      The Parties shall advise the Court of the termination, and shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination. If approved by the Court, then the Settlement Claims Administrator shall provide a Court-approved notice to Class Members and any Authorized Claimants that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members or Authorized Claimants under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

4.      If any party terminates this action, Defendants retain the right to contest the merits of the claims being asserted in the Action.

5.      If this settlement is not consummated for any reason, including (1) a Termination under this Agreement, (2) a ruling by the Court declining to enter a Preliminary Approval Order or Final Order in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order), or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of the Court's ruling if necessary. To the extent such efforts fail, the Parties may continue to litigate the Action as though this Agreement had never been executed.

## 3.0     SETTLEMENT TERMS AND DUE DILIGENCE REVIEW

### 3.1     Amount.

Subject to their right to terminate this Agreement as outlined in Section 2.10, Defendants, collectively and individually agree to pay Six Hundred Thousand Dollars ($600,000.00) for the purposes of calculation and allocation purposes and that amount shall fully resolve and satisfy any and all amounts to be paid to all Authorized Claimants for releasing claims, and any Court-approved Costs and Fees.

(A)     **Funding the QSF.** Defendants shall fund the QSF in three equal installments:

(1)     The first payment shall be made on or before December 1, 2015 in the amount of $1/3^{rd}$ of the Final Settlement Amount;

(2)     The second payment on or before June 1, 2016 in the amount of $1/3^{rd}$ of the Final Settlement Amount; and

(3)     The third and final payment on or before December 1, 2016 in the amount of $1/3^{rd}$ of the Final Settlement Amount.

(B)     **Deduction of Employer and Employee Payroll Taxes**.

      (1)     All applicable Employer Payroll Tax contributions ordinarily and regularly associated with wage payments, including, but not limited to, the employer share of FICA, FUTA, and SUTA will be paid by the Defendants and are not included as part of the Settlement Fund.   All applicable Employee Payroll Tax contributions will be paid out of the Authorized claimant's Individual Gross Amount. Defendants will provide the Settlement Claims Administrator such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

      (2)     The Settlement Claims Administrator shall calculate the appropriate and regular tax deductions from each Authorized Claimant's Individual Gross Amount (as calculated by Section 3.5) to determine the Individual Net Amount. The Individual Net Amount will be the amount reflected on the Settlement Checks. Any reduction reflected in the difference between the Individual Gross Amount and Individual Net Amount will not affect the Final Settlement Amount or the Net Settlement Amount.

**3.2**   **Payments from the QSF.**  The Settlement Claims Administrator shall make the following payments from the QSF, once the QSF is funded as described in Section 3.1(A):

      (1)     Within five (5) days of the QSF being funded as described in Section 3.1(A), the Settlement Claims Administrator shall (i) mail any Settlement Checks to Authorized Claimants, (ii) mail any and all Service Awards to the Named Plaintiffs, (iii) mail or wire-transfer payment to  Class Counsel in the amount of Court-approved attorneys' fees and costs, and (iv) make payments to the Settlement Claims Administrator in the amount of Court-approved Settlement Claims Administrator's costs and expenses.

      (2)     Checks issued to the Class Claimants pursuant to this Agreement shall remain negotiable for a period of at least one hundred eighty (180) days from the date of issuance, and the Funds associated with any checks which are not properly or timely negotiated shall remain the property of Defendants and shall not be paid to any Person other than Defendants.  The parties hereby agree that such funds represent settlement payments for matters disputed in good faith, not uncontested wage payments, and they shall not be subject to escheat rules, *cy pres*, or other distribution not provided for in this Stipulation.  Class Claimants who fail to negotiate their check(s) within one hundred eighty (180) days, like all Class Members, remain subject to the terms of the Settlement, including but not limited to a release of the Settled Claims.  Any amounts representing uncashed Settlement Checks, Service Awards, or any other amount remaining in the QSF for 180 days after the mailing of the final payment will revert back to Defendants..

**3.3**   **Amounts Payable as Attorneys' Fees, Expenses, and Costs.**

(A)     At the Fairness Hearing and in connection with the Application for Final Approval, Class Counsel will petition the Court for an award of no more than Two Hundred Thousand Dollars ($200,000.00).  This shall include attorneys' fees, costs and expenses incurred in connection with the litigation. Defendants may not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)     The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)     Defendants shall fund the Court-approved Costs and Fees representing Class Counsel's costs, fees and expenses in the manner described in Section 3.1.

(D)     If the amount of Attorneys' Fees, Expenses, and Costs is reduced by the Court, the amount of the reduction shall revert back to the Gross Settlement Fund for Distribution to Class Members on a pro rata basis.

**3.4     Service Awards to Named Plaintiffs.**

(A)     In return for services rendered to Class Members, Authorized Claimants or the Settlement Class, at the Fairness Hearing, Plaintiffs may apply to the Court to receive Service Awards of no more than Fifty Thousand Dollars ($50,000.00) from the QSF, to be divided as Ten Thousand Dollars ($10,000.00) each to Named Plaintiffs Gustavo Saravia, Ronald Cucolo, and Omar Morales Aguilar, Seven Thousand Five Hundred Dollars ($7,500) each to Abraham Carlos Reyes and Rachel Brill, who are Opt-in Plaintiffs in this matter, and Two Thousand Five Hundred Dollars ($2,500) each for David Olano and Jose Castro, who are Opt-in Plaintiffs in this matter.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)     Defendants shall fund the Court-approved Costs and Fees representing Service Awards in the manner described in Section 3.1.

(D)     If the amount of Service Awards are reduced by the Court for any reason, the amount of the reduction shall revert back to the Gross Settlement Fund for Distribution to Class Members on a pro rata basis.

**3.5     Net Settlement Fund and Allocation to Class Members.**

I.  **Gross Earnings**. First, each Class Member's individual gross earnings (as reported on W-2 earning statements) for the period December 1, 2009 through the date of the Preliminary Order, will be determined. Such information will be provided in the Class List to the Settlement Claims Administrator and Class Counsel pursuant to Section 2.5(A).

II.  **Categories.** Second, Class Member will be classified in one of two categories - either FOH Workers (FOH) or BOH Workers + Shift Leaders (BOH + SL). The parties shall endeavor to resolve any dispute over an individual's position. If not, the dispute shall be heard by an arbitrator agreed to by both parties. The hearing shall last for no longer than one (1) hour - thirty (30) minutes per side.

III.  **Percentage Allocation.** Third, each Class Member's percentage is calculated by (1) taking the individual Class Member's earnings as the numerator, and (2) dividing it by the sum of gross earnings for all Class Members in that category (either FOH or BOH + SL) as the denominator. The denominator for each Class Member in that category will be the same number. As a result of this calculation, the total of all Class Members' numerators must equal the denominator. Thus, the Class Member's individual wages divided by the sum of all adjusted wages for all Class Members in that category equals his/her individual percentage allocation.

IV.  **Amount Allocation.** Fourth, two separate funds shall be created whereby the FOH Workers would receive two-thirds (2/3) of the Gross Settlement fund less pro-rated Costs and Fees ("FOH Fund") and the BOH + SL would receive one-third (1/3) of the Gross Settlement fund less pro-rated Costs and Fees ("BOH + SL Fund"). The FOH Fund and BOH + SL Fund shall be multiplied by each Authorized Claimant in that particular category's percentage allocation as calculated in Section 3.5(III). This represents the individual amount allocated to each Authorized Claimant – or Individual Gross Amount.

**3.6  Confessions of Judgment & Default**

(A)  No later than five (5) days before the Fairness Hearing, Gerald Shallo, David Chiong, and Elizabeth Gaudreau shall each, in their individual capacity and on behalf of the corporate Defendants, sign confessions of judgment ("Confessions") in the amount of the Final Settlement Amount. No later than five (5) days before the Fairness Hearing, Defendants shall provide the Confessions to Class Counsel via overnight mail and email. The Confession of Judgments shall be void in the event the Court fails to approve the Agreement in its final form or if the Agreement is Terminated pursuant to Section 2.10

(B)  If Defendants fail to make any payment as required pursuant to Section 3.1(A), then Class Counsel shall provide notice of such missed payment to Defendants' counsel, via email and overnight mail, no earlier than five (5) days after such missed payment ("Notice of Default"). After receipt of the Notice of Default, Defendants

shall have ten (10) days to cure such default. If such default is not cured within ten (10) days of receipt of the Notice of Default ("Default"), then Plaintiffs may execute the Confessions of Judgment.

(C)     The Parties agree that the Court will maintain continuing jurisdiction over any breach of the Agreement, and that Defendants shall pay the reasonable costs, fees, and expenses of pursuing any breach of this Agreement, including this Section 3.6.

**3.7     Tax Characterization.**

(A)     Half of Settlement Checks to Authorized Claimants as identified in Section 3 will be deemed W-2 wage income and the other half shall be deemed 1099 non-wage income as liquidated damages. All Costs and Fees and expenses will be considered 1099 non-wage income. Half of all wage payments to Authorized Claimants shall be subject to applicable payroll and withholding taxes.  All Costs and Fees shall be paid from the QSF, unless this Agreement is terminated, in which case provision 2.10(B) applies.

**3.8     Release of Claims.**

(A)     By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement each individual Class Member who (i) does not timely opt-out pursuant to this Agreement, or (ii) opted out of the Action at an earlier time, forever and fully releases Released Defendants from Released Class Claims.

(B)     Except as provided in this Agreement, upon payment of the Attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Released Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation, except to the extent provided in this Agreement, including those stated in Sections 3.3 or 3.6.

(C)     By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, Released Defendants shall be deemed to have and shall fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Class Members, each and all Authorized Claimants, and Class Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of this Action or the Released Class Claims.

(D)     Upon approval of the Final Order by the Court, the Parties hereby agree to execute a Stipulated Order of Dismissal pursuant to Rule 41 of the FRCP the lawsuit styled

_Saravia et al. v. 2799 Broadway Grocery LLC_, 12-CV-7310 (PAC) (GWG) and _Brill et al. v. Shallo_, Index No. 150880/2014 (NYS Supreme Court, NY County) pursuant to CPLR 3217.

(E)     Upon full execution of this Agreement, the parties in the _Brill v. Shallo_ action (supra) shall file a stipulation staying that action pending approval of the Final Order.

**3.9     Non-Admission of Liability.**

(A)     By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Named Plaintiffs and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiffs in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**4.0     THE CONDITIONAL NATURE OF THIS SETTLEMENT**

This Agreement and all associated exhibits or attachments are made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis. This Agreement and the Settlement it evidences are made in compromise of disputed claims. Because this Action was plead as a Class Action, this Settlement must receive preliminary and final approval from the Court. In the event that the Court does not execute and file an Order granting final approval of the Settlement for any reason, this Settlement shall be deemed null and void _ab initio_, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms and entry of the Agreement shall be deemed inadmissible as evidence subject to the provisions of Federal Rule of Evidence 408.

Defendants deny all of the claims as to liability, damages, penalties, interest, fees, restitution and all other forms of relief as well as the class allegations asserted in this Action. Defendants have agreed to resolve this Action via this Agreement, but to the extent this Agreement is deemed void *ab initio*, Defendants do not waive, but rather expressly reserve, all rights to challenge all such claims and allegations in the Action upon all procedural and factual grounds, including without limitation, the ability to challenge class treatment on any grounds or assert any and all defenses or privileges. Plaintiffs expressly reserve all rights to oppose any such challenges to Defendants.

## 5.0   INTERPRETATION AND ENFORCEMENT

5.1   **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2   **No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

5.3   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4   **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiffs and all Class Members in this Action, this agreement is binding.

5.5   **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6   **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law

principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8    **Continuing Jurisdiction.**  The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Parties may not unilaterally petition the Court to modify this Agreement or to increase the Defendants' payment obligations, except to the extent provided in this Agreement.

5.9    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11    **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.12    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.13    **Consultation and Authority.** Counsel for the Named Plaintiffs warrant and represent that they have consulted with Named Plaintiffs and have full authority to enter into this Agreement on behalf of the Named Plaintiffs and the Settlement Class.

**WE AGREE TO THESE TERMS,**

**2799 Broadway Grocery LLC d/b/a Cascabel Taqueria**

By: _Elizabeth Gaudreau_

Title: MEMBER

Print Name: ELIZABETH GAUDREAU

Dated: 6/20/2015

**301 East 80th Grocery LLC d/b/a Cascabel Taqueria**

By: _David Chong_

Title: MEMBER

Print Name: DAVID CHONG

Dated: 6/20/2015

**David Chiong**

_David Chong_

Dated: 6/20/2015

**Elizabeth Gaudreau**

_Elizabeth Gaudreau_

Date: 6/20/2015

**Gerald Shallo**

_____

Dated: _____

**Gustavo Saravia**

_____

Dated: _____

**Ronald Cucolo**

**2799 Broadway Grocery LLC d/b/a Cascabel Taqueria**

**By:** _____
**Title:** _____
**Print Name:** _____
**Dated:** _____

**301 East 80th Grocery LLC d/b/a Cascabel Taqueria**

**By:** _____
**Title:** _____
**Print Name:** _____
**Dated:** _____

**David Chiong**

_____

**Dated:** _____

**Elizabeth Gaudreau**

_____

**Date:** _____

**Gerald Shallo**

_____

**Dated:** _____

**Gustavo Saravia**

_____

**Dated:** _____

**Ronald Cucolo**

**2799 Broadway Grocery LLC d/b/a Cascabel Taqueria**

**By:** _____

**Title:** _____

**Print Name:** _____

**Dated:** _____


**301 East 80th Grocery LLC d/b/a Cascabel Taqueria**

**By:** _____

**Title:** _____

**Print Name:** _____

**Dated:** _____


**David Chiong**

_____

**Dated:** _____

**Elizabeth Gaudreau**

_____

**Date:** _____

**Gerald Shallo**

_____

**Dated:** _____

**Gustavo Saravia**

_____

**Dated:** 6/12/15

**Ronald Cucolo**

Dated: 6/8/15

**Omar Morales Aguilar**

Dated: 06 - 15-2015

22